DISTRICT COURT OF THE UNITED STATES
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Samyeil Bernard Barber, ) | |
| ) | Civil Action No. 5:12-cv-02177-JMC-KDW |
| Petitioner, ) | |
| ) | |
| v. ) | REPORT AND RECOMMENDATION |
| ) | |
| Warden Robert M. Stevenson, III, ) | |
| ) | |
| Respondent. ) | |
| ) | |

Petitioner, Samyeil Bernard Barber ("Petitioner" or "Barber"), a state prisoner, filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) DSC, for a Report and Recommendation on Respondent's Return and Motion for Summary Judgment. ECF Nos. 19, 22. Petitioner filed a response in opposition to Respondent's motion on March 14, 2013, ECF No. 34, and Respondent filed a reply to Petitioner's response on March 15, 2013, ECF No. 35. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 22, be GRANTED.

    I.    Factual Background

Petitioner is currently incarcerated in the Broad River Correctional Institution of the South Carolina Department of Corrections ("SCDC"). In 2005, Petitioner was indicted in the September term of the York County Grand Jury for burglary first degree, armed robbery, attempted armed robbery, possession of a firearm during the commission of a violent crime, possession of a pistol by person under twenty-one, criminal conspiracy, assault and battery with

intent to kill, and murder. App. 738-768.[1] On November 28-30, 2005, a jury trial was conducted before the Honorable Lee S. Alford in York, South Carolina. App. 1-550. Attorneys Lyle J. Yurko and Derrick Chiarenza represented Petitioner, and Solicitor Thomas E. Pope represented the State. App. 1. Petitioner was convicted on all indictments and was sentenced to an aggregate of fifty-five years imprisonment. App. 525, 550.

II.     Procedural History

Trial counsel timely filed and served the Notice of Appeal. On August 8, 2006, the South Carolina Court of Appeals dismissed Petitioner's appeal due to trial counsel's failure to provide information regarding the transcript. App. 569. The Remittitur was issued on September 13, 2006. App 568. On September 25, 2007, Petitioner filed an application seeking post-conviction relief ("PCR") arguing that his trial and appellate counsel were ineffective. App. 570-83. The State filed its Return on January 25, 2008, requesting an evidentiary hearing on Plaintiff's ineffective assistance of counsel claims. App. 585-88. On October 28, 2008, an evidentiary hearing was conducted before the Honorable John C. Hayes, III in York, South Carolina. App. 590. Petitioner was represented by Tara Dawn Shurling, Esq., while the State was represented by Assistant Attorney General Ashley A. McMahan. *Id.* Petitioner; his former trial counsels, Lyle Yurko and Derek Chiarenza; and Petitioner's grandmother, Laura Turner, testified at the hearing. App. 593-677. On November 24, 2010, the PCR court issued an Order granting Petitioner a belated appeal, denying Petitioner's other grounds for relief and making the following findings of fact and conclusions of law:

> In a PCR proceeding, the Applicant bears the burden of establishing that he is entitled to relief. Caprood v. State, 338 S.C. 103, 109, 525 S.E.2d 514, 517 (2000). There is a two-prong test for evaluating claims of ineffective assistance

---

[1] Citations to "App." refer to the Appendix to Petitioner's claim for collateral relief in the state courts of South Carolina, which is available at ECF Nos. 19-1, 19-2, 19-3, 19-4, 23-1, 23-2, 23-3, and 23-4, in this habeas matter.

of counsel.  First, a PCR applicant must show that his counsel's performance was deficient such that it falls below and objective standard of reasonableness. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984); Alexander v. State, 303 S.C. 539, 541, 402 S.E.2d 484, 485 (1991). Under this prong, the court measures an attorney's performance by its "reasonableness under professional norms." Cherry v. State, 300 S.C. 115 at 117, 386 S.E.2d 624 at 625 (1989), *citing* Strickland.

Second, an applicant must show there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Strickland, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693; Alexander, 303 S.C. at 541-42, 402 S.E.2d at 485.  The Courts presume that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  Strickland, Id.  Applicant must overcome this presumption in order to receive relief.  Cherry, Id.

Applicant asserts more particularly that his family, who hired Lyle Yurko, thought Mr. Yurko was licensed in South Carolina.  There is no evidence that Mr. Yurko's licensure amounts to any ineffective assistance.  Mr. Yurko associated South Carolina counsel, Derek Chiarenza.  Applicant ties no error in Mr. Yurko's representation to the license issue.  This allegation is patently without merit.

Applicant called Lyle Yurko, trial counsel, as his first witness.  Mr. Yurko testified that he is not and was not at the time of his representation of Applicant licensed to practice law in South Carolina.  Mr. Yurko testified that he immediately informed Applicant's family of this fact and advised them that local South Carolina counsel would need to be associated.

Mr. Yurko testified that he, along with co-counsel, thoroughly investigated Applicant's case, accumulated three boxes of evidence, was thoroughly prepared for trial when Applicant's case was called, went over the State's discovery with Applicant, and met with Applicant over twenty (20) times.  Mr. Yurko testified that he went over with Applicant the witness statements, the police report, the weapon forensics, and the legal concept of accomplice liability.

Mr. Yurko testified that he and co-counsel engaged in negotiation with the State after their investigation lead them to conclude that Applicant faced an extraordinary risk in going to trial.  Mr. Yurko testified the State offered what he considered a very generous offer and he urged Applicant to accept the offer.

Mr. Yurko testified that he dealt extensively with Applicant's grandparents who hired him and encouraged them to encourage Applicant to accept the plea offer.  Mr. Yurko testified he explained to the grandparents and Applicant that based on a risk/benefit analysis Applicant should accept the plea offer. Mr. Yurko testified that in reaching his conclusion that Applicant should take the plea offer he factored in that the State could not prove who the actual

"shooter" was and that the incident involved a home invasion of a drug dealer's home.  Mr. Yurko also testified he explained to Applicant that a murder sentence was a day for day sentence while voluntary manslaughter carried an 85% minimum time of service.

Mr. Yurko testified that he thoroughly explained to Applicant accomplice liability including how it applied to a charge of murder.

Mr. Yurko testified he had no written fee agreement but Applicant's grandparents were told his fee was only for trial not for representation of Applicant in an appeal.  However, Mr. Yurko testified that post trial a Notice of Appeal was filed on the Applicant's behalf and the trial transcript ordered.  Mr. Yurko testified he was informed by the grandparents that another attorney had been hired to handle the appeal.

Mr. Yurko testified that his trial strategy was to concentrate on the witnesses' sequence of events, who was present at the time of the shooting, who fired the shot, and attack the testifying co-defendants, and the hope that the victim, a drug dealer, would garner little jury appeal.

Mr. Yurko testified he discussed with Applicant the right he, Applicant, had to appointed appellate counsel and twice sent Applicant request for appointed counsel forms.

Derek Chiarenza testified he has been associated with Mr. Yurko about a half a dozen times and that he, Mr. Chiarenza, participated in the plea negotiations.  Mr. Chiarenza testified that like Mr. Yurko he had urged Applicant to take a plea offer of a twenty (20) year cap voluntary manslaughter.

Mr. Chiarenza and Mr. Yurko were asked about not objecting to the solicitor's alleged mischaracterization of the felony murder doctrine in his closing argument.  Mr. Yurko testified he was relying on Mr. Chiarenza to address South Carolina legal issues.  Mr. Chiarenza testified he did not feel the solicitor's reference to felony murder was improper to the point of warranting an objection.  It also appears from the record that the trial judge twice charged the jury as to the concept of accomplice liability and clearly limited the application of the felony murder doctrine to inferred malice (Trial TR p. 491, L 24 through p. 429, L2).

Mr. Chiarenza testified that he filed a Notice of Appeal; however, he was quickly informed by Applicant's family that new counsel would be hired to handle the appeal.  Mr. Chiarenza acknowledged he never asked to be relieved as Applicant's counsel.  Mr. Chiarenza testified he was associated for trial by Mr. Yurko, had never handled an appeal, and never gave Applicant's family any indication that he would handle the appeal.

4

The record reflects that there was some confusion regarding the appeal, the trial transcript, and new counsel. However, for the purpose of this post-conviction relief application, the matter of moment is that, even after notice of the appeal's impending dismissal, trial counsel took no action whatsoever to prevent the remittitur of Applicant's case to the Court of General Sessions without the appeal being perfected for appellate consideration.

Applicant's grandmother Laura Turner testified she raised Applicant, hired Yurko, and did not understand he would have to associate South Carolina counsel. She testified that Mr. Yurko was not hired to handle an appeal but was informed by him that an appeal had been filed.

Applicant testified on his own behalf. He acknowledges the hiring of Mr. Yurko was handled by his grandparents. He testified he rejected all of the State's plea offers including the one a day before trial for a ten (10) to fifteen (15) year range.

Applicant acknowledged he went over the State's discovery and had trial strategy sessions with trial counsel. Applicant felt the State had a weak case and could not prove him to be the triggerman. He testified he thought he had to be proved to be the triggerman to be convicted of murder. He testified if he had understood accomplice liability he would have taken a plea.

Applicant testified he told Mr. Yurko he wanted to appeal, that he never received a copy of the notice of intent to appeal, never received the indigent application forms, learned about the right to appointed counsel from reading law books while incarcerated post trial, that he did receive a copy of the trial transcript, and was shocked to find his appeal had been dismissed. Applicant testified he never meant to waive his right to a direct appeal.

The State recalled Mr. Yurko after Applicant rested and he testified that he was not hired for an appeal and had the notice of intent to appeal filed as a favor and that he thought the sentence the trial judge imposed was unconscionable and should have been addressed on appeal.

As set forth above, the burden is on Applicant to prove ineffective assistance of counsel. He has failed to carry his burden of proof except as to two matters.

The thrust of these matters is trial counsel's failure to object to the solicitor's felony murder/accomplice liability argument. See Strickland, supra. However, Applicant has failed to show that there is a reasonable probability that but for counsel's error the results of the proceeding would have been different. See Strickland, supra.

5

The record is clear the jury was properly instructed as to the concept of felony murder as it relates to malice and accomplice liability as it relates to joint criminal responsibility. The trial judge instructed the jury that he was the "sole and only instruction in the law" and that they had to accept the law as he charged it and apply it to the evidence.

Any misstatement of the law by the solicitor in closing argument could not, under the judge's charge in its totality, have been applied by the jury in its deliberations unless the jury ignored the judge's charge and this Court must assume they did not.

The posture of this case is somewhat of a catch-22. Applicant submits under the facts of this case he should be entitled to an appeal since trial counsels' ineffective handling of the appeal after the filing of the notice resulted in his appeal being dismissed on procedural grounds, any substantive grounds being therefore unaddressed or even presented.

The State's posture is that Applicant has had an appeal and even though its disposition was based on procedural grounds there can be no belated appeal even though trial counsel was ineffective in following through after the appeal was noticed to see that the appeal was perfected.

Under the facts here extant, the Court finds Applicant has in fact had no appeal. To use the apple analogy so often found in the post-conviction relief forum, Applicant has had no bite at the apple, a nibble perhaps, but no full bite.

Rather than get mired in the nuances of the posture of this case based on the filing of the notice of intent to appeal, the Court addresses the belated appeal under the guidelines of White v. State, 263 S.C. 110, 208 S.E.2d 35 (1974); Davis v. State, 288 S.C. 290, 342 S.E.2d 60 (1986); and Sheppard v State, 357 S.C. 46, 646 S.E.2d 462 (2004).

The seminal belated appeal case appears to be White, supra. In White, the post-conviction relief judge relied on Nelson v. Peyton, 415 F.2d 1154 (1969) and Shiflett v. Commonwealth of Virginia, 447 F.2d 50 (1971), in reaching the conclusion that White had "not knowingly and intelligently waived his right to appeal." 208 S.C. 21 at 39.

In Nelson, the Fourth Circuit stated that where a State provides a criminal defendant appellate review the defendant "must be affronted full resort to the review and to the documents and tools of appellate review." 415 F.2d at 1157.[1]

While Nelson is a case in which the defendant had not been advised of his rights to an appeal rather than one who, like Applicant here, had an aborted appeal, the Court finds the heart of the issue here is addressed in Nelson. Nelson

6

clearly stands for the proposition that a defendant is entitled to "full resort" to appellate review and to the "documents and tools" applicable to appellate review.

The focus in Shiflett was whether or not Nelson was to be applied prospectively or retroactively. However, of importance here is this language from Shiflett:

> To assure that the decision to take or forego and appeal would depend only on the defendant's informed choice, we required in Nelson that he be given complete information by his lawyer or the Court about his request to appeal and the conditions he must meet to exercise it.

447 F.2d at 53.

Here the Court finds Applicant has not had full resort to his right to appeal and he was not given complete information by counsel concerning the condition that he had to meet to exercise this right. It is true Mr. Yurko testified he sent to Applicant applications to apply for appointed counsel, although Applicant denies receipt of either. However, Mr. Yurko who wrote Applicant a letter stating the appeal was "saved" failed to notify Applicant when his appeal was sinking and did not take any action to save the appeal at the very crucial, "drop dead," time.

---

[1] Nelson was an indigent defendant. The record here is silent at to Applicant's financial status post trial. Trial counsel obviously felt Applicant qualified for appointed counsel and Applicant is currently represented by appellate counsel. The Court finds no distinction in this instance between indigent and non-indigent defendant rights regarding appeal.

The Court affirmatively finds Applicant did not knowingly and intelligently waive his right to appeal and, by trial counsel's conduct, has been denied his rights to have full resort to an appeal. See Davis, supra.

Wherefore,

(1) Applicant's request for vacation of his conviction and sentence and a new trial is denied and as to the issues related thereto his application is dismissed with prejudice.

(2) Applicant is, pursuant to Davis, supra, afforded the right to petition for a writ of certiorari pursuant to Appellate Court Rule 227. Applicant is directed to Davis v. State, supra, and to Appellate Court Rule 227, particularly Rule 227(i), for instructions and directions as to how to further proceed based on the Court's ruling here.

App. 719-726. Petitioner did not file a Rule 59(e), SCRCP, Motion to Alter or Amend. Petitioner, represented by Attorney Tara Dawn Shurling, filed a Petition for Writ of Certiorari, dated October 21, 2009. ECF No. 24. The two questions presented, quoted verbatim, were:

I. Whether the lower court improperly found that the Respondent/Petitioner was not prejudiced by defense counsel's failure to object to the solicitor's improper closing argument on felony murder?

II. Whether the lower court properly found that the Respondent/Petitioner was entitled to a belated direct appeal pursuant to White v. State, 263 S.C. 110, 208 S.E.2d 35 (1974)?

*Id.* at 3. The State filed a Return to Petition for Writ of Certiorari on February 19, 2010. ECF No. 24-3. Petitioner also filed a brief pursuant to *White v. State*.[2] ECF No. 24-1. Petitioner presented the following issue on appeal: "Did the lower court improperly charge the jury on the law of accomplice liability?" *Id.* at 4. The State filed a Petition for Writ of Certiorari and presented one question: "Is there probative evidence to support the lower Court's finding that Applicant is entitled to a belated direct appeal pursuant to White v. State, 263 S.C. 110, 208 S.E.2d 35 (1974)?" ECF No. 24-2. The South Carolina Supreme Court issued an Order on March 2, 2011 denying Petitioner's Petition for Writ of Certiorari as to Question I, and granted the petition as to Question II. ECF No. 24-5. The court also granted the State's petition. *Id.* On June 27, 2011, the South Carolina Supreme Court issued an Order affirming Petitioner's convictions and sentences. ECF No. 24-6. Petitioner filed a Petition for Rehearing on July 12, 2011, ECF No. 24-7, which was denied on August 5, 2011, ECF No. 24-8. The Remittitur was issued on August 5, 2011. ECF No. 24-9. Petitioner filed his habeas Petition on August 2, 2012. ECF No. 1.

---

[2] 263 S.C. 110, 208 S.E.2d 35 (1974).

III.     Standard for Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

IV.     Discussion

A.  Federal Habeas Issues

Petitioner raises the following issues in his federal petition for a writ of habeas corpus, quoted verbatim:

> GROUND ONE:  The Petitioner's right to due process of law, as protected by the Fifth and Fourteenth Amendments to the United States Constitution, was violated

9

> when the trial court improperly charged the jury on the law of accomplice liability for the murder.
>
> Supporting facts: According to the witnesses presented by the State at trial, at approximately 4:30-4:45 A.M. on May 15, 2005, three assailants, two of whom were visibly armed, forcibly entered Alan Heintz's apartment shouting "where's the money" and "where's the weed." See App. p. 84, line 23-p.85, line 1. (all citations to App. reference the Appendix filed in the Supreme Court of South Carolina with the Petition for Writ of Certiorari filed following review of his PCR application in the circuit court). In addition to Heintz, four other individuals- Coleman Robinson, Kyle Robinson, Stephanie Powell, and Eric McGee – were present in the apartment when the assailants entered. See App. p. 83, lines 4-5. After demanding money and marijuana from the individuals in the apartment, the three assailants ordered all the individuals into a bedroom. See App. p. 86, lines 2-13. As they were moving toward the bedroom, Heintz pulled out a shotgun. See App. 87, lines 6-14. In response to Heintz's action, approximately three or four shots were fired, resulting in Heintz being killed and McGee being shot. See App. p. 97, lines 15-25. The assailants fled the scene. None of the individuals in the apartment were able to identify any of the assailants. However, Robert Kimbrell, Kenneth Walker, and Marcus Kiser, the Respondent/Petitioner's co-defendants, all testified against Petitioner at trial (Continued in attachment hereto).
>
> GROUND TWO: The State Court improperly found that the Petitioner was not prejudiced by defense counsel's failure to object to the solicitor's improper closing argument addressing a felony murder rule.
>
> Supporting facts: In the State PCR action, Petitioner argued that his right to effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, was violated by trial counsel's failure to object to an improper closing argument by the prosecution in which the State argued the application of the so-called felony murder rule in this case. In support of his claim of ineffective assistance of counsel during his trial, he demonstrated that trial counsel (1) failed to provide him with reasonable professional assistance of counsel under the prevailing standards for attorneys representing clients in criminal matters by failing to object to this highly improper closing argument and further, that he was prejudiced by trial counsel's failure to object to a degree that he was deprived of a fair trial. The Petitioner demonstrated that but for counsel's error in this regard, there existed a reasonable probability that the result at trial would have been different. Petitioner was charged with several crimes, including armed robbery and ABWIK, in addition to the murder of Heintz. (continued in attachment hereto)

ECF No. 1 at 6-7.

B. Habeas Corpus Standard of Review

1. Generally

Because Petitioner filed his Petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 399 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

2. Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions. 28 U.S.C. § 2254. This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require that a habeas petitioner first submit his claims for relief to the state

courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

        a.      Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B) (i) there is an absence of available State corrective process; or
>>
>> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the exhaustion requirement, a habeas petitioner must fairly present his claims to the state's highest court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may consider only

those issues that have been properly presented to the highest state courts with jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction: (1) through a direct appeal; or (2) by filing an application for PCR. State law requires that all grounds be stated in the direct appeal or PCR application. Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90; *Blakeley v. Rabon*, 221 S.E.2d 767, 770 (S.C. 1976). If the PCR court fails to address a claim as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion to alter or amend the judgment pursuant to Rule 59(e), SCRCP. Failure to do so will result in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v. State*, 653 S.E.2d 266, 267 (S.C. 2007). Strict time deadlines govern direct appeals and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court or the South Carolina Court of Appeals. *See State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002) (holding "that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error.") (quoting *In re Exhaustion of State Remedies in Criminal and Post-Conviction Relief*, 471 S.E.2d 454, 454 (S.C. 1990)).

### b. Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court explains:

> . . . [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

*Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 23, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and

prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Teague v. Lane*, 489 U.S. 288, 297-98 (1989); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### 3. Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray v. Carrier*, 477 U.S. at 496-97. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor that hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Coleman*, 501 U.S. at 752-53; *Murray v. Carrier*, 477 U.S. at 488-89. Absent a showing of cause, the court is not required to consider actual prejudice. *Turner v. Jabe*, 58 F.3d 924, 931 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray v. Carrier*, 477 U.S. at 503-506. To show actual prejudice, the petitioner must demonstrate more than plain error.

### V. Analysis

#### A. Ground One - Due Process Violations

Respondent argues that he is entitled to summary judgment on Ground One of Petitioner's habeas Petition – that Petitioner's due process rights were violated due to lack of

evidence to support an accomplice liability jury charge. ECF No. 19 at 14. Respondent contends that Ground One "is at its core, a state law question" and argues that "the substance of the claim presented in state court was entirely premised upon state law – namely whether the trial court correctly charged the jury on the law on South Carolina." *Id*. at 15. Respondent therefore avers that this ground "is not a cognizable federal claim." *Id.* at 14.

In response, Petitioner contends that his "claim is intrinsically grounded in the Due Process Clause" and that "the enlargement of the charge against him by means of an instruction as to an alternative theory of guilt (i.e., accomplice liability) effectively diluted the State's burden of proof beyond a reasonable doubt." ECF No. 34 at 8. Petitioner argues that, therefore, summary judgment on this issue is improper. *Id.*

Respondent alleges that Petitioner's Ground One was not presented to the state trial or appellate courts. ECF No. 35 at 4. Respondent contends that the South Carolina Supreme Court "never understood Petitioner's brief to be a due process question as its legal analysis of the claim cites entirely to South Carolina case law to determine whether the evidence presented at trial supported the trial court's charge on accomplice liability." *Id.* at 5. Respondent argues that Ground One is procedurally defaulted and "is unavailable absent a finding of cause and prejudice or a miscarriage of justice." *Id.* at 6.

The undersigned has reviewed the PCR court's Order, Petitioner's *White v. State*[3] appellate brief, the South Carolina Supreme Court's Order affirming Petitioner's conviction and sentence, and Petitioner's Petition for Rehearing, and finds that Petitioner's due process claim was not raised before and/or ruled on by the PCR court or the South Carolina appellate courts. Therefore, this issue is procedurally barred from federal habeas review. *See Yeatts v. Angelone,* 166 F.3d 255, 261 (4th Cir.1999); *see also* S.C. Code Ann. § 17–27–90, –45; *Aice v. State*, 305

---
[3] 208 S.E.2d 35 (1974).

16

S.C. 448, 409 S.E.2d 392, 394 (S.C.1991); S.C. App. Ct. R. 203(d)(3), 243. Accordingly, Petitioner has bypassed his state remedies and, as such, is procedurally barred from raising Ground One of his habeas Petition.

Federal habeas review of a state prisoner's defaulted federal claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. The existence of cause ordinarily turns upon a showing of a factor external to the defense which impeded counsel or Petitioner's compliance with the state procedural rule. *Murray v. Carrier*, 477 U.S. at 488. The undersigned has reviewed the record and finds that Petitioner has not shown sufficient cause and prejudice to excuse the default of the above-referenced claim. Petitioner had numerous opportunities to raise the issue that he is now attempting to bring before this court, however, he failed to raise it, raise it properly, or preserve the issue for habeas review. Petitioner has not argued that he is actually innocent of the crimes for which he was convicted, such "that failure to consider the claims will result in a fundamental miscarriage of justice." *Clagett v. Angelone*, 209 F.3d 370, 379 (4th Cir. 2000) (citing *Coleman*, 501 U.S. at 750)); *see also Weeks v. Angelone*, 176 F.3d 249, 269 (4th Cir. 1999). The undersigned therefore recommends that the Respondent's Motion for Summary Judgment be granted as to Ground One of Petitioner's habeas Petition.[4]

### B.  Ground Two – Ineffective Assistance of Counsel

Respondent argues that he is entitled to summary judgment on Ground Two of Petitioner's habeas Petition because the state court was "not unreasonable in finding Petitioner failed to show that he was prejudiced by counsel's alleged failure to object to the solicitor's

---

[4] The Fourth Circuit has stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995). Accordingly, the undersigned will not discuss the merits of Ground One.

closing comment about felony murder." ECF No. 19 at 30. Respondent contends that Petitioner is unable to show that "the PCR Court unreasonably applied federal law in denying relief upon this claim." *Id.* at 21-23. Respondent argues that

> when reviewing the solicitor's comments in the context in which they were made and when viewed in conjunction with the trial court's jury charge, as well as the evidence against Petitioner, the State submits the solicitor's allegedly improper comment, if objected to, would not have established that there was a substantial likelihood the result of trial would have been different.

*Id.* at 32.

Petitioner alleges that summary judgment should be denied because he showed both attorney error and prejudice, under *Strickland,* from the solicitor's improper comments about the felony murder rule. ECF No. 34 at 10. Petitioner argues that trial counsel should have objected because South Carolina does not recognize the felony murder rule and "[t]he State's closing argument improperly shifted the burden of proof from the State to the Respondent/Petitioner by arguing that the fact that an individual was killed during the course of a felony renders the perpetrator of that felony guilty of murder." *Id.* Petitioner further argues that the jury's deliberations show that the improper argument infected the jury's verdict on the indictment for murder and if not for the improper argument "the jury would have carried their evident doubt of the State's case to a not guilty verdict for the Petitioner." *Id.* at 11.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970). In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court held that to establish ineffective assistance of counsel, a petitioner must show deficient performance and resulting prejudice. Counsel renders ineffective assistance when his performance "[falls] below an objective standard of reasonableness," but there is a "strong

18

presumption" that counsel's performance was professionally reasonable. *Id.* at 688-89. Prejudice requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Having reviewed the record, the undersigned finds that it was not unreasonable for the PCR court to find that Petitioner failed to meet his burden of showing that he was prejudiced by his trial counsel's failure to object to the solicitor's felony murder/accomplice liability argument. *See* App. 723. The PCR court's finding that Petitioner "failed to show that there is a reasonable probability that but for counsel's error the results of the proceeding would have been different" is supported by the record, especially in light of the trial court's jury instructions. The PCR court's decision was not contrary to, nor an unreasonable application of, clearly established federal law under §2254(d)(1). The undersigned therefore recommends that Ground Two be dismissed.

VI.     Conclusion

The undersigned has considered each of Petitioner's grounds for habeas corpus relief and recommends that each be dismissed. Accordingly, for the foregoing reasons, the undersigned recommends that Respondent's Motion for Summary Judgment, ECF No. 22, be GRANTED and the habeas Petition be DISMISSED with prejudice.

IT IS SO RECOMMENDED.

June 11, 2013                                                                                  Kaymani D. West
Florence, South Carolina                                                          United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**